



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEM/AT
F. #202300718

*610 Federal Plaza*
*Central Islip, New York 11722*

February 20, 2026

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:     United States v. Jose Saez, Jr.
        <u>Criminal Docket No. 23-480 (S-1)(JMA)</u>

Dear Judge Azrack:

The government respectfully submits this letter in advance of sentencing in the above-referenced case, which is scheduled for April 22, 2026 at 1:00 p.m. On March 11, 2025, the defendant pleaded guilty to Count Two of a twelve count superseding indictment, charging sexual exploitation of a child, in violation of Title 18, United States Code, Sections 2251(a) and (e). See June 27, 2025 Presentence Investigation Report ("PSR") ¶ 1.[1] As explained in the PSR, the defendant, a pastor at a church in Brentwood, New York, and the father of young children between the ages of one and five, engaged in sexual relationships with minors, including online and in person. PSR ¶ 5. The defendant groomed his victims and ultimately coerced victims into sending him videos of the victims masturbating and putting objects in their anuses, which the defendant distributed. Id. 7. The defendant also raped at least one minor, as described below, coercing the minor into performing sexual acts for the defendant's pleasure.

For the reasons set forth below, the government respectfully submits that, after considering the factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)"), including the seriousness of the offense and the need to protect the community, the Court should sentence the defendant to a term of custody of 292 to 360 months imprisonment, followed by an extended term of supervised release. Such a term is sufficient but not greater than necessary to ensure, among other things, specific and general deterrence, and is consistent with recent sentences in comparable cases within this district and nationally.

---

[1]     The PSR includes an addendum that was shared with the parties on October 2, 2025 and a second addendum that was shared with the parties on January 13, 2026.

I.  The Offense Conduct

The defendant, while employed as a pastor at a church in Brentwood, established online sexual relationships with minors and coerced those minors to send the defendant child sex abuse material ("CSAM"). The defendant was prolific in his solicitation and distribution of CSAM – at the time of his arrest, the defendant was in possession of thousands of videos and tens of thousands of images of CSAM. As explained in the Second Addendum to the PSR, the defendant solicited CSAM from his victims after verifying that his victims were minors, for example, having his victims show the defendant their license and date of birth, ensuring that they were as young as he could get his hands on. The defendant used many different social media handles and pretended to be multiple different individuals to trick his young victims and ultimately solicit CSAM from them.

In addition to the defendant's prolific solicitation and distribution of CSAM, the defendant also raped a minor (the "Victim") in a bathroom stall located in a public restroom in Mount Sinai. The defendant began his scheme to abuse the Victim by initially contacting the Victim using social media. The defendant told the Victim that he was a politician[2] and asked for the Victim's license, which the Victim provided to the defendant. At a certain point, when communicating with the Victim, the defendant sent the Victim CSAM of what the Victim described as "kids", which greatly disturbed the Victim, so the Victim blocked the defendant on social media. The defendant was undeterred and ultimately found the Victim on social media again. The Victim feared that because the Victim provided his identification to the defendant, there could be consequences to refusing the defendant's demands. The Victim also told law enforcement that the Victim was depressed during the period that the Victim was communicating with the defendant. While the Victim and the defendant communicated over social media, the defendant ordered the Victim to send pictures of himself masturbating and pictures of his "ass". The Victim complied with the defendant's demands.

In May 2023, the defendant told the Victim to meet him at Heritage Park in Mount Sinai. The Victim, knowing the defendant had his identification, complied and traveled on his bicycle to Heritage Park despite the fact that the Victim did not want to go. In order to further coerce the Victim to meet at Heritage Park, the defendant promised the Victim that nothing sexual would happen. Once the defendant and the Victim arrived at the park and talked for a short period, the defendant told the Victim to go inside a public restroom with him. The Victim was nervous, and did not want to go, but, again, felt like he "had to" because the defendant knew a lot about him. The defendant instructed the Victim to get on his knees, took off his own pants, and had the Victim perform oral sex on his erect penis. During the incident the defendant also placed his finger inside the Victim's anus. The Victim later explained to law enforcement that he did not want to perform oral sex on the defendant or be digitally penetrated but was scared at the time and was worried if he refused the defendant would become upset.

---

[2]  Using a different social media account, the defendant simultaneously contacted the Victim claiming to be a police officer.

II.     Guidelines Calculation

        The government agrees with the Guidelines calculation set forth by the United
States Probation Department ("Probation") in the PSR, which is the same Guidelines calculation
contemplated in the defendant's signed Plea Agreement, and to which the defendant stipulated.
PSR at ¶¶ 16-27.  The PSR correctly calculates a final offense level of 40, and a Criminal
History Category of I, making the advisory Guidelines sentencing range 292 to 365 months'
imprisonment.  PSR at ¶ 78.  Because the statutorily authorized maximum sentence is 360
months' imprisonment, the effective Guidelines range is 292 months to 360 months'
imprisonment.  Id.

III.    The Defendant Should Be Sentenced to a Guidelines Range of Imprisonment

        For the reasons set forth below, the government respectfully submits that the
defendant should be sentenced to a term of custody of 292 months to 360 months' imprisonment.

   A. Legal Standard

        In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the
Guidelines were no longer mandatory, but should be considered in conjunction with the factors
outlined in § 3553(a).  Thereafter, the Supreme Court confirmed that § 3553(a) requires a
sentencing court to give respectful consideration to the Guidelines, but Booker allows the court
to "tailor the sentence in light of other statutory concerns[.]"  Kimbrough v. United States, 552
U.S. 85, 101 (2007) (citing Booker at 245-46 and Gall v. United States, 552 U.S. 38, 46-49
(2007)).  However, the Supreme Court explained that even though the Guidelines are now
advisory, "district courts must treat the Guidelines as the 'starting point and the initial
benchmark'" when determining a defendant's sentence.  Kimbrough at 108 (citing Gall at 50 and
Rita v. United States, 168 L. Ed. 203, 213 (2007)).

        With the Guidelines as the "starting point and the initial benchmark," the Court
should next consider the factors set forth by Congress in § 3553(a).  Id.  That statute provides
that a Court should consider a number of factors when determining a defendant's sentence,
including:

        (1) the nature and circumstances of the offense and the history and characteristics
            of the defendant; and

        (2) the need for the sentence imposed: (A) to reflect the seriousness of the
            offense, to promote respect for the law, and to provide just punishment for the
            offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect
            the public from further crimes of the defendant; and (D) to provide the
            defendant with needed educational or vocational training, medical care, or
            other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

As set forth below, an analysis of the § 3553(a) factors, which includes the nature and circumstances of the offense and the need to deter both the defendant and others from engaging in violent and destructive conduct similar to what occurred here, overwhelmingly weighs in favor of a substantial sentence for this particular defendant, who relentlessly preyed on minors, manipulated them to participate in their own sexual abuse, and raped a minor on the floor of a public restroom.

B. Analysis

The defendant's conduct here was egregious and predatory, both in its escalation and scope. He had a vast collection of CSAM. He took these images and traded them with other sexual predators that, like him, received sexual gratification from raping children, as evidenced by the defendant's online statements that were noted within the PSR: "I've eaten out a baby." PSR ¶ 6. The defendant, who at the time was engaged in an online conversation, was indignant when the other person suggested that the children might turn down the defendant's sexual advances, stating, "Getting turned down implies I'm giving them a choice." Id. ¶ 8.

This defendant, however, was not satisfied with his already large collection of CSAM and furthered his crime spree by using social media to coerce multiple children to produce new depictions of sexually explicit conduct, including masturbation videos, for his sexual gratification. And finally, when two-dimensional images of child abuse were no longer enough, this defendant, not limited to the online exploitation of children, raped the Victim.

i. 3553(a)(1)

As an initial matter, with respect to § 3553(a)(1), the nature and circumstances of the offense, sexually exploiting children is among the most serious of crimes. The immediate and long-term damage caused to victims of such conduct is hard to comprehend. In this instance, the defendant's crimes are particularly heinous. The defendant created social media accounts for the sole purpose of exploiting minors. Indeed, the defendant pretended to be others, including a minor, a politician, and a law enforcement officer so that he could connect with minors and gain their trust. The defendant groomed his victims, and then after drawing them in, manipulated them to please his sexual desires. The defendant sent these minors hundreds and hundreds of messages, sometimes from multiple different accounts, and the defendant then had his victims memorialize their sexual abuse in photos and videos for his own sexual pleasure. Overall, the evidence showed that the defendant conversed online with numerous children, both messaging them and engaging in video conversations, and further, caused many of them to engage in sexually explicit conduct.

Of course, the defendant's rape of the Victim distinguishes this case from many others. This defendant did not only download CSAM (he was a prolific collector of CSAM). This defendant did not only solicit CSAM (again, the defendant's crimes were prolific here too). This defendant did not only distribute CSAM (again, prolific). This defendant took his crimes a step further. He coerced the Victim, through fear or otherwise, to meet with him in person. He then raped the Victim by coercing him to engage in sexual acts that the Victim felt compelled to perform, acts which the Victim, as the defendant well knew, could not legally consent to.

With respect to history and characteristics, the defendant's lack of criminal history does not set him apart from other similarly situated defendants. Indeed, most federal child pornography offenders have no prior records at the time that they are sentenced.[3] Moreover, any mitigating value attributable to the fact that the defendant had never been caught prior to the instance case is outweighed by the fact that his conduct here was not a one-time event. It was not even a multiple-time event with a single victim. This defendant exploited multiple children on multiple occasions, over an extended period. His protracted behavior was the product of considerable planning and daily, if not hourly, conscious decisions to manipulate and victimize children. This incessant conduct requires a substantial term of imprisonment.

ii. 3553(a)(2)

Consideration of Section 3553(a)(2), the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the defendant and promote respect for the law, likewise weighs in favor of a substantial sentence. As previously noted, the defendant's conduct was deliberate, compulsive, pervasive and affected a wide range of children. Here, the defendant manipulated children to abuse themselves and raped a child in person as well. The defendant without a doubt caused traumatic sexual contact, and in doing so, he used minors as pawns in their own victimization. For victims to live with the knowledge that they participated—albeit as a result of manipulation and grooming—in their own victimization is what makes this type of child exploitation, commonly referred to as production, so harmful to the actual victims. Thus, this conduct is reprehensible. Still more, the defendant caused his victims to memorialize this traumatic abuse in photos and videos, and so the evidence of this abuse will exist in perpetuity.

Similarly, the need for the sentence imposed to promote respect for the law, provide just punishment to the defendant and promote general and specific deterrence, likewise supports a substantial sentence. Here, the defendant disguised his identity, often times posing as a person in a position of authority or power, and used social media to gain access to children and child exploitation materials. Today, there are countless applications that can and are used by pedophiles to engage in the very same crimes as those committed by the defendant. The pool of vulnerable minors on these applications grows larger everyday as children increasingly access and use the internet. Indeed, in a report published in 2021, the United States Sentencing Commission observed that "a growing proportion of production offenders exploit victims remotely through the use of the internet and mobile devices."[4] According to the same report,

---

[3]     U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (2019) at 23, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf (last viewed February 16, 2026).

[4]     United States Sentencing Commission (2021), Federal Sentencing of Child Pornography: Production Offenses, at 1, 35, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (the "Child Pornography Production Report") ("For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform, more than double the

"the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019." Id. at 3. In light of the increasing frequency at which these crimes are being committed, it is important for the public to be aware that predators like the defendant seek out victims in this arena, and for people like the defendant to understand that their crimes will be punished commensurate with their seriousness. Thus, a lengthy sentence in this case would send a strong message to those, both domestically and abroad, who seek to sexually exploit children that courts will not tolerate the sexual abuse of children and that the consequences for such criminal conduct will be significant.

Pursuant to 3553(a)(2)(C), it is imperative that the sentence imposed protect the public from further crimes of the defendant, which will most effectively be done when he does not have access to electronic devices that access the internet, and thus which can only be done when he is incarcerated. The sentence imposed must prevent the defendant from reengaging in this behavior and thereby harming the most vulnerable members of our community.

iii.    <u>A Guidelines Sentence is Consistent with Sentences Imposed</u>

Finally, a Guidelines sentence is consistent with the sentences imposed in this district and on a national level in comparable cases. For example, on March 2, 2022, in <u>United States v. Caroleo</u>, the defendant, who pleaded guilty just prior to trial, was sentenced to 30 years' incarceration in connection with his conviction for the online sexual exploitation of a minor. No. 17-CR-177 (S-1) (ENV). In that case, the defendant, who had a demonstrated history of physical and emotional trauma, caused a 14-year-old girl to produce sexually explicit images of herself, and to send those images to him using the Kik application.

Similarly, on October 14, 2022, in <u>United States v. Torres Rivas</u>, the defendant, who pleaded guilty prior to trial, was sentenced to 25 years' incarceration in connection with his conviction for the online sexual exploitation of a minor. No. 20-CR-494 (GRB). In that case, the defendant targeted multiple minor females on Snapchat, including a 13-year-old. <u>See</u> also <u>United States v. Mejia</u>, 18-CR-81 (JMA) (imposing 28 year sentence in case where defendant used Facebook, posed as a 13-year-old-boy, and manipulated minors to perform sexually explicit acts and photograph their younger relatives nude); <u>United States v. Weiss</u>, No. 21-CR-449 (PMH) (S.D.N.Y. Nov. 15, 2022) (imposing 25-year sentence in case where defendant engaged in the sexual exploitation of numerous young teens through the use of Snapchat); <u>United States v. Deutsch</u>, No. 18-CR-502 (FB) (imposing 20 year sentence in case where defendant was convicted after trial of sexually exploiting four victims, between ages 11 and 16, but none of whom were manipulated to physically abuse themselves).

By way of further example, according to the Child Pornography Production Report, based on a review of federal sentences imposed in 2019, the average sentence for offenders who sexually exploited minors was 275 months' incarceration. Child Pornography Production Report at 50. Relatedly, courts imposed longer than average sentences when various factors were present in a case, many of which are also present in the defendant's case, including:

---

proportion of offenders sentenced in fiscal year 2010 who met their victims online (14.3%)") (last viewed February 16, 2026).

victims engaged in sexual contact alone, including self-contact id. at 47; the defendant's use of coercive tactics and enticements, id. at 48; the defendant's misrepresentation of his identity to commit the offense, id.; and the defendant's pattern of sexual exploitation of children, id. at 50.

IV.    Conclusion

Although the defendant experienced his own challenges growing up, and does not have a criminal history, his conduct was horrific, even setting him apart from other individuals who are guilty of violating the same statute. He is manipulative and destructive, with a demonstrated sexual interest in the most vulnerable members of our society, for whom he has absolutely no regard. The level of sexual coercion, and the prolific amount, used by the defendant against his victims supports a significant sentence, not less than a Guidelines Sentence, notwithstanding any mitigating evidence put forth. Indeed, such a sentence is necessary to reflect the seriousness of the offense and protect the public from further harm.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     _____/s/_____
Mark E. Misorek
Adam R. Toporovsky
Assistant U.S. Attorneys
(631) 715-7846 (Toporovsky)

cc:    Clerk of the Court (JMA) (by ECF)
Counsel for the defendant (by ECF)
Probation Department (by email)